DECISION AND JOURNAL ENTRY
{¶ 1} Appellant/Cross-Appellee Ford Motor Co. has appealed from numerous decisions of the Summit County Court of Common Pleas concerning its motions for judgment notwithstanding the verdict, motions regarding attorney's fees, a motion for credit for satisfying partial judgment, and motions regarding pre and post-judgment interest. Appellees/Cross-Appellants James and Lori Hokes have cross-appealed from the trial court's decision granting a directed verdict against their Consumer Sales Practices Act claim. This Court affirms in part, reverses in part, and dismisses in part.
 {¶ 2} On December 21, 2001, conversion van owners Appellees/Cross-Appellants James and Lori Hokes ("Owners") filed a complaint against Ford Motor Company ("Ford") and Ford Motor Credit Company ("Ford Credit") alleging Lemon Law, breach of warranty, and Magnuson-Moss violations as well as Consumer Sales Practices Act ("CSPA") violations. Owners requested a refund of the full purchase price of the vehicle, including their past, present, and future financing expenses attendant to the financing of the vehicle; a refund of all repair costs and replacement costs; an award of all incidental and out-of-pocket expenses; a money judgment in the amount of $25,000 together with all financing expenses incurred; treble damages; an award of costs and expenses of the action including reasonable attorney fees; and punitive damages.
 {¶ 3} On January 24, 2002, Ford Credit filed an answer and counter-claim against the Owners. Ford Credit alleged breach of contract and a claim of replevin. The Owners filed a timely answer to Ford Credit's counterclaim.
 {¶ 4} On February 4, 2002, Ford Motor Company answered the Owners' complaint.
 {¶ 5} On May 2, 2002, the Owners filed an amended complaint alleging the same violations, but adding Klaben Ford, Inc. ("Klaben") as a Defendant. Ford Credit filed an answer to the Owners' amended complaint and reiterated its previous claims in its counterclaim against the Owners. On June 27, 2002, Klaben filed an answer to the Owners' complaint and on July 11, 2002 Ford filed its answer to the Owners' amended complaint.
 {¶ 6} On July 23, 2002, Ford Credit filed a voluntary dismissal of its counterclaim against the Owners.
 {¶ 7} On July 24, 2002, Klaben filed an amended answer to the Owners' amended complaint and a cross-claim against Ford. Klaben argued that Ford had a statutory, common law, and contractual duty to defend and indemnify it. Ford answered Klaben's cross-claim denying Klaben's allegations and asserting that Klaben failed to state a claim upon which relief could be granted.
 {¶ 8} Prior to trial, the parties entered a stipulation on the record that the claims against Ford Credit were derivative in nature and that Ford Credit need not be present during the trial. Ford Credit did not waive any defenses in so stipulating. The record also reflects that Klaben settled with Owners prior to trial and said case would be dismissed with prejudice. The only remaining claim involving Klaben was its cross-claim against Ford, which the parties agreed did not need to be presented to the jury, but rather reserved for trial to the court after the conclusion of the jury trial.
 {¶ 9} A jury trial commenced on February 19, 2003 and at the close of evidence the trial court granted Ford's motion for a directed verdict on the Owners' CSPA claim. The jury subsequently found in favor of the Owners and against Ford. Specifically, the jury found by a preponderance of the evidence that:
1) the vehicle did not conform to any applicable express warranty provided by Ford; 2) the vehicle had a defect or condition that substantially impaired its use, value, or safety; 3) Ford was given a reasonable number of opportunities to repair the Owners' vehicle; 4) for purposes of Ohio's Lemon Law, that Ford was the manufacturer of the Owners' vehicle; 5) the total amount of damages recoverable under Ohio's Lemon Law was $35,000; 6) Ford violated the Magnuson-Moss Warranty Act; 7) the total amount of damages recoverable under the Magnuson-Moss Warranty Act was $18,000; 8) the Owners were entitled to damages for Breach of Express Limited Warranty and Implied Warranty in the amount of $53,000 in actual damages and $60,000 in consequential damages. Accordingly, the Owners were awarded a total of $166,000 in damages. The trial court also awarded $27,691.67 in pre-judgment interest to the Owners and ordered that it be merged with the $166,000 for a total of $193,691.67.
 {¶ 10} On March 10, 2003, the Owners and Klaben filed a notice of partial dismissal, which dismissed with prejudice "all claims by and between" the Owners and Klaben.
 {¶ 11} On March 24, 2003, the Owners filed a motion for attorney's fees.
 {¶ 12} On March 25, 2003, Ford filed a motion for judgment notwithstanding the verdict ("JNOV") or, in the alternative, a new trial. Ford argued that it was entitled to JNOV on the Owners' breach of warranty claims under Magnuson-Moss and the U.C.C. and on Owners' Lemon Law claim. The Owners replied in opposition to Ford's motion for JNOV, or in the alternative, for a new trial. Ford responded with a reply in support of its motion.
 {¶ 13} The Owners also filed a motion for pre-judgment interest, merger, and post-judgment interest. Ford responded with a motion in opposition. The trial court awarded the Owners 10% interest per annum on their total judgment of $166,000. On April 8, 2003, counsel for the Owners filed a judgment lien against Ford reciting the date of judgment as March 11, 2003, the amount as $166,000, the interest as 10%, and the date interest began to run as February 21, 2003.
 {¶ 14} On May 28, 2003, Ford filed notice of its partial satisfaction of the judgment stating it partially satisfied the judgment on the Owners' Lemon Law claim in the amount of $36,926.32, which was proportionally paid to the Owners and Ford Credit.
 {¶ 15} On August 14, 2003, the trial court denied Ford's motions for JNOV, a new trial and remittitur and granted the Owners' motion for pre-judgment interest on its judgment.
 {¶ 16} After a hearing and several filings on the matter, the trial court determined that the Owners were entitled to $103,483.28 in attorney's fees. The trial court found that of the expended hours submitted for payment, 447.74 hours were reasonable and necessary; the trial court also allowed litigation expenses in the amount of $2,741.78.
 {¶ 17} On January 28, 2005, Ford filed its notice of appeal and on February 3, 2005 the Owners filed a notice of cross-appeal.
 {¶ 18} On March 3, 2005, the trial court ordered that the Owners' award of attorney's fees would accrue interest from the date of the initial judgment entry, March 11, 2003. The trial court also found that Ford should not get credit for partial satisfaction of the Owners' judgment for the $21,007 that it paid to Ford Credit.
 {¶ 19} As a result of Ford's filings, it had two appeals pending:[1]
one from the trial court's rulings from March 11, 2003, August 14, 2003, December 30, 2004, and January 6, 2005[2] and one from the trial court's March 3, 2005 decision which held that Ford was not entitled to a credit against the judgment for the amount it paid to Ford Credit and that Owners were entitled to post-judgment interest on the attorney's fees award. On March 24, 2005, this Court granted Ford's motion to consolidate C.A. 22502 and C.A. 22577. In support of its consolidated appeal, Ford has asserted six assignments of error. In support of their cross-appeal Owners have asserted one cross-assignment of error. For ease of analysis, we have rearranged Ford's assignments of error and consolidated some of its assignments of error.
 II Assignment of Error Number Two
"THE TRIAL COURT ERRED IN DENYING FORD'S MOTION FOR JNOV ON [OWNERS'] MAG-MOSS AND BREACH OF WARRANTY CLAIMS BECAUSE [OWNERS] FAILED TO MEET THEIR BURDEN OF PROOF ON THESE CLAIMS."
Assignment of Error Number Three "THE TRIAL COURT ERRED IN DENYING FORD'S MOTION FOR JNOV ON THE JURY'S VERDICT AWARDING $60,000 IN CONSEQUENTIAL DAMAGES ON [OWNERS'] BREACH OF WARRANTY CLAIM."
 {¶ 20} In its second assignment of error, Ford has argued that the trial court erred in denying its motion for JNOV on Owners' claims under Magnuson-Moss and breach of warranty. Specifically, Ford has argued that Owners failed to meet their burden of establishing the value of the van as delivered/accepted. In its third assignment of error, Ford has argued that the trial court erred in denying its motion for JNOV on the issue of consequential damages on Owners' breach of warranty claim. Specifically, Ford has argued that the jury's award of $60,000 in consequential damages on the breach of warranty claim was "wholly unsupported by the evidence [.]"
 Standard of Review {¶ 21} An appellate court reviews a trial court's ruling on a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) de novo. Cooperider v. Parker, 9th Dist. No. 02CA0065-M, 2003-Ohio-4521, at ¶ 32, citing Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257-58. When considering a motion for judgment notwithstanding the verdict, a court construes the evidence and all reasonable inferences most strongly in favor of the nonmoving party. Posin v. A.B.C. Motor Court Hotel
(1976), 45 Ohio St.2d 271, 275. Our review does not involve weighing the evidence. McComis v. Baker (1974), 40 Ohio App.2d 332, 334-35. Rather, if we find substantial evidence to support the non-moving party's side of the case, upon which reasonable minds might reach different conclusions, the motion was properly denied. Posin, 45 Ohio St.2d at 275.
 Magnuson-Moss/Breach of Warranty Claims {¶ 22} Ford has argued that the trial court erred in denying its motion for judgment notwithstanding the verdict because Owners failed to present evidence as to the value of the van as accepted. Owners have responded that they met their burden by presenting evidence of the purchase price of the van and of the problems with the van.
 {¶ 23} Pursuant to R.C. 1302.88(B):
"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."
R.C. 1302.88(B) applies to general breach of warranty claims and Magnuson-Moss claims. Accordingly, to prevail on such claims one must provide evidence as to the value of the vehicle as accepted, meaning the value of the vehicle with all of the problems that were unknown to the buyers at the time of purchase, and the value of the vehicle as warranted.
 {¶ 24} The record shows that Owners provided evidence of the sticker price of the van, the total gross capitalized cost of the van on the lease, and the problems they experienced with the van. In response to questions regarding whether the van had value to him, Mr. Hokes answered "If it doesn't run, no." The evidence also showed that Owners had put 34,000 miles on the van in the two and half years they had possession of the van.
 {¶ 25} We find that even in construing the evidence in a light most favorable to Owners, that there was not substantial evidence to support Owners' claims for damages under R.C. 1302.88(B), upon which reasonable minds might reach different conclusions. There was no evidence of the value of the van as accepted. "As accepted" relates to the vehicle the purchasers actually received, not what they thought they were receiving. The record is void of any evidence of the reduced value of the van; Owners failed to present evidence through their own testimony or that of others as to what the value of the van was when one takes into consideration the "no start" problem. Mr. Hokes' testimony about the van not being of value when it doesn't run is not evidence of the value of the van at acceptance. To constitute such evidence Owners, or other witnesses on their behalf, needed to explain in terms of value, by percentages or monetary amounts, how the problems with the van reduced its value into the value as accepted.
 {¶ 26} Owners have asserted that based on this Court's opinion inT.R.C. Industries, Inc. v. Industrial Capital Machinery, Inc. (Nov. 24, 1982), 9th Dist. No. 10478, they were not required to show the difference in values as required in R.C. 1302.88(B), but rather damages could be awarded "in any manner which is reasonable." We disagree and find T.R.C.
distinguishable from the instant matter. In T.R.C. the plaintiff was given equipment that: 1) was not completed in accordance with the specifications contained in the purchase order, which resulted in a greatly reduced efficiency level; 2) did not fit the ordinary purpose for which it was to be used; 3) was delivered late, when the defendants knew that late delivery would damage the plaintiff; and 4) was repaired in an untimely manner, specifically taking six weeks longer than reasonable to do the repair work. T.R.C. at 1-2. Trial testimony established the effect of the late delivery and non-conformity and the costs of the untimely repairs and the costs of bringing the equipment into conformity with the purchase agreement. In reaching its decision in T.R.C. this Court focused on the non-conformity aspect of the goods supplied to T.R.C. and relied on Comment two of R.C. 1302.88 to find that damages could be determined in any reasonable manner. Given the facts of the case and the evidence presented, this Court departed from the structure of the statute and looked to the comments for guidance. We do not find such a departure from R.C. 1302.88 is necessary or appropriate in this case. In the case sub judice no evidence has been presented that the van failed to meet the specifications as outlined in the lease, that it was delivered late, that repairs were made in an untimely fashion, or that it did not conform to the lease agreement. We realize that the van was in for repair several times, that the repairs were not always successful, and that the van did not start all the time, but the repairs were addressed in a timely manner and Owners were able to drive the van 34,000 miles in two and a half years.
 {¶ 27} Based on the foregoing, we find that the departure from R.C.1302.88 is not warranted in this case and that the clear language of the statute mandates the method for determining damages. Moreover, we decline to base a decision on a comment to a statute rather than the actual binding authority of the statute. When the language of a statute is unambiguous this Court applies the clear meaning of the words used.Roxane Laboratories, Inc. v. Tracy (1996), 75 Ohio St.3d 125, 127. Accordingly, R.C. 1302.88(B) provides the proper method for establishing damages on Owners' Magnuson-Moss and breach of warranty claims. As previously discussed, we find that Owners have failed to present any evidence on the issue of the value of the van as accepted. Accordingly, Ford was entitled to judgment notwithstanding the verdict on those damages claims. Ford's second assignment of error has merit.
 Consequential Damages on Breach of Warranty Claim {¶ 28} Ford has argued that Owners' $60,000 consequential damages award based on their breach of warranty claim was not supported by the evidence.
 {¶ 29} Pursuant to R.C. 1302.88(C), "[i]n a proper case any incidental and consequential damages under [R.C. 1302.89] may also be recovered." R.C. 1308.88(C) provides for damages in addition to or independent of the damages under R.C. 1302.88(B). R.C. 1302.88 provides a method for obtaining damages and two separate types of damages and damage provisions, general damages under section (B) and incidental or consequential damages under section (C). R.C. 1302.88(C) directs us to R.C. 1302.89 to determine whether Owners have established consequential damages. Consequential damages are set out in R.C. 1302.89(B) and involve a separate, independent standard from the damages discussed in Ford's second assignment of error. R.C. 1302.89(B) provides:
"(B) Consequential damages resulting from the seller's breach include: (1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (2) injury to person or property proximately resulting from any breach of warranty." R.C. 1302.89(B).
 {¶ 30} The record shows that Owners provided the following evidence as to the injuries they suffered as a result of the alleged breach of warranty. Mrs. Hokes testified that she incurred a $710 hotel bill during her extended stay in Nebraska when the van was "possessed" and would not start. Owners admitted three exhibits for unreimbursed expenses as a result of the no start problem: 1) a towing bill for $90 (exhibit 22); 2) a bill from Kenmore Kar Kare for $70 (exhibit 23); and 3) a bill from Tony's Towing without an amount (exhibit 24). Accordingly, the only monetary evidence produced by Owners totaled $870. Owners' testimony also included incidents of aggravation and inconvenience from the van not starting, but Ohio law does not allow recovery for emotional distress from a breach of contract/warranty case, or recovery for emotional distress from the destruction of property. See Strawser v. Wright
(1992), 80 Ohio App.3d 751.
 {¶ 31} Construing the evidence in a light most favorable to Owners, we find that there was not substantial evidence, upon which reasonable minds might reach different conclusions, to support the jury's award of $60,000 in consequential damages on the breach of warranty claim. While Owners testified to the aggravation and other emotions they experienced from their problems with the van, the only evidence of injury recoverable under R.C. 1302.89(B) was their costs for the hotel stay, towing and the non-Ford repairs, which were far less than the $60,000 Owners were awarded. Based on the foregoing, we find that Ford was entitled to judgment notwithstanding the verdict on Owners' award of consequential damages for breach of warranty and the matter should have been reopened pursuant to Civ.R. 50(B).
 {¶ 32} Civ.R. 50(B) provides:
"[A] party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion[.] A motion for a new trial may be joined with this motion, or a new trial may be prayed in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment[.]" Civ.R. 50(B).
The record shows that Ford moved for JNOV or in the alternative a new trial. Pursuant to Civ.R. 50(B) and App.R. 12(B), this Court reopens this issue and enters judgment in favor of Owners in the amount of $870 as consequential damages on their breach of warranty claim. Accordingly, Ford's third assignment of error has merit because the $60,000 consequential damages award was unsupported by the evidence; however, Owners are still entitled to the stated consequential damages.
 Assignment of Error Number One
"THE TRIAL COURT ERRED IN ENTERING JUDGMENT ON [OWNERS'] MAGNUSON-MOSS AND BREACH OF WARRANTY CLAIMS IN ADDITION TO [OWNERS'] LEMON LAW CLAIMS BECAUSE [OWNERS'] RECOVERY FOR BREACH OF WARRANTY UNDER MAGNUSON-MOSS AND THE U.C.C. CONSTITUTES TRIPLE RECOVERY FOR THE SAME INJURY, WHICH IS PROHIBITED."
 {¶ 33} In its first assignment of error, Ford has argued that the trial court erred in entering judgment on Owners' Magnuson-Moss, breach of warranty, and Lemon Law claims because such a judgment results in a triple recovery. Specifically, Ford has argued that the trial court's action resulted in the Owners recovering more than once for the same injury.
 {¶ 34} Given this Court's resolution of Ford's second and third assignments of error and Owners' cross-assignment of error, Ford's first assignment of error is moot, and we decline to address it.[3] See App.R. 12(A)(1)(c).
Assignment of Error Number Four "THE TRIAL COURT ERRED IN DENYING CREDIT TO FORD WITH $21,007 PAID TO [FORD CREDIT] COMPANY IN PARTIAL SATISFACTION OF THE JUDGMENT."
 {¶ 35} In its fourth assignment of error, Ford has argued that the trial court erred in denying credit for its payment of $21,007 to Ford Credit in partial satisfaction of the judgment. Specifically, Ford has argued that it should be given credit for the monies it paid Ford Credit when Owners returned the car to Ford. We disagree.
 {¶ 36} Pursuant to R.C. 1345.72(D)(1):
"If the consumer elects to take a refund, the manufacturer shall forward the total sum required under division (B) of this section by an instrument jointly payable to the consumer and any lienholder that appears on the face of the certificate of title or the lessor. Prior to disbursing the funds to the consumer, the lienholder or lessor may deduct the balance owing to it, including any fees charged for canceling the loan or the lease and refunded pursuant to division (B) of this section, and shall immediately remit the balance if any, to the consumer and cancel the lien or the lease."
 {¶ 37} The record below shows that Ford sent one check to Owners and another to Ford Credit as a refund for the returned van. The trial court found that Owners did not comply with R.C. 1345.72(D)(1) and therefore they were not entitled to a credit for the payment Ford Credit received. Specifically, the trial court found that "Ford Motor Credit's name does not appear as a lienholder on the face of the certificate of title, and Klaben Ford is listed as the lessor on the lease documents. Therefore the payment to Ford Motor Credit does not fulfill the requirements of the statute and is not eligible to be credited as partial satisfaction of the judgment." We agree.
 {¶ 38} The van's vehicle lease agreement states that "`Ford Credit' is Ford Motor Credit Company. The `Holder' is Ford Credit Titling Trust Co." As the trial court found, Klaben Ford is listed as the lessor. The certificate of title shows Klaben Ford as a previous owner and Ford Credit Titling Trust as the current owner. Neither the lease agreement nor the certificate of title lists Ford Credit as lessor or lienholder.
 {¶ 39} Based on the foregoing, we find that the trial court did not err in denying Ford credit for partial satisfaction of judgment for its payment to Ford Credit because the payment did not comply with R.C.1345.72(D)(1). Accordingly, Ford's fourth assignment of error lacks merit.
 Assignment of Error Number Five
"THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING [OWNERS'] IN EXCESS OF $100,000 IN ATTORNEY'S FEES WHERE THE AWARD INCLUDES FEES INCURRED PURSUING OTHER DEFENDANTS, UNSUCCESSFUL CLAIMS, DEFENDING A MOTION FOR SANCTIONS AGAINST [OWNERS'] COUNSEL ONLY, AND CHARGED PARALEGAL TIME AT $225 PER HOUR."
 Assignment of Error Number Six
"THE TRIAL COURT ERRED IN AWARDING POST-JUDGMENT INTEREST ON [OWNERS'] ATTORNEY'S FEE AWARD FROM THE DATE OF THE ORIGINAL JUDGMENT ON THE JURY'S VERDICT RATHER THAN FROM DECEMBER 30, 2004-THE DATE THE AMOUNT OF FEES WAS DETERMINED."
 {¶ 40} In its fifth assignment of error, Ford has argued that the trial court erred in its award of attorney's fees. In its sixth assignment of error, Ford has argued that the trial court erred in awarding post-judgment interest on the attorney's fees from the date of the original judgment.
 {¶ 41} Given this Court's resolution of Ford's second and third assignments of error, we reverse the award of attorney's fees, including the post-judgment interest start date, and remand the matter for recalculation.
 Cross-Assignment of Error Number One
"THE TRIAL COURT ERRED TO THE PREJUDICE OF [OWNERS] IN GRANTING [FORD'S] MOTION FOR DIRECTED VERDICT REGARDING VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT."
 {¶ 42} In their sole cross-assignment of error, Owners have argued that the trial court erred in granting Ford's motion for directed verdict on Owners' CSPA claims. Specifically, Owners have argued that Ford clearly violated the act and therefore, a directed verdict was improper. We dismiss Owners' cross-assignment of error as moot.
 {¶ 43} Pursuant to R.C. 1345.09(A):
"Where the violation was an act prohibited by [R.C. 1345.02 or1345.03], the consumer may, in an individual action, rescind the transaction or recover his damages."
It is undisputed that after the trial, the contract was rescinded and that Owners returned the van, ceased making payments on it, and were compensated for the previous monthly payments they had made on the van. Having already rescinded the contract, R.C. 1345.09(A) leaves no other remedy for Owners. Accordingly, we find their cross-assignment of error moot.
 {¶ 44} "Actions or opinions are described as `moot' when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." (Citations omitted). Culver v. City ofWarren (1948), 84 Ohio App. 373, 393. An issue or question can be found moot due to a new fact or change in the circumstances of a case. See State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections (1999),86 Ohio St.3d 107 (appeal dealing with placing a name on a ballot that could not be decided before the election is moot); Poulson v. WoosterCity Planning Comm., 9th Dist. No. 04CA0077, 2005-Ohio-2976 (appeal involving construction of a building was moot when the construction commenced without the appellant obtaining a stay).
 {¶ 45} We find Owners' cross-assignment of error is moot because pursuant to R.C. 1345.09(A), Owners could either rescind the contract or recover damages, not both, therefore given that the contract has since been rescinded, Owners have no remedy remaining under R.C. 1345.09(A). We find that Owners' returning the van and accepting payment for the amount they paid on the van constitutes an election of remedy under R.C.1345.09(A) and that Owners cannot now argue that they should have been able to present their CSPA claim to the jury when they have already received their remedy under the statute. Given that Owners' argument is moot, any opinion this Court would deliver on Owners' cross-assignment of error would be merely advisory and we decline to provide such an opinion on this matter.
 {¶ 46} Owners' sole cross-assignment of error is dismissed as moot.
 III {¶ 47} Ford's second assignment of error is sustained. Ford's third assignment of error is sustained in part and pursuant to App.R. 12(B) this Court enters judgment for Owners in the amount of $870 as consequential damages on their breach of warranty claim. Ford's first assignment of error is moot pursuant to App.R. 12 (A)(1)(c). Ford's fifth and sixth assignments of error are reversed and remanded for recalculation. Ford's fourth assignment of error is overruled. Owners' cross-assignment of error is dismissed as moot. The trial court's decision is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Slaby, P.J., Moore, J. Concur.
[1] By order of this Court the portion of the appeal involving Klaben Ford, Inc. was voluntarily dismissed.
[2] This trial court order involved Klaben's cross-claim and based on our prior order is no longer a part of the instant appeal.
[3] The interrogatories returned by the jury do not indicate that Owners were awarded consequential damages on their Lemon Law claim, therefore, receiving said damages on their breach of warranty claim does not raise an issue of double recovery.