[Cite as *Xpedx v. Customer Printing, Inc.*, 196 Ohio App.3d 225, 2011-Ohio-2473.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| XPEDX, | ) | |
| | ) | CASE NO.    10 MA 149 |
| APPELLEE, | ) | |
| | ) | |
| V.- | ) | O P I N I O N |
| | ) | |
| CUSTOMER PRINTING, INC., | ) | |
| | ) | |
| APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court,
Case No. 08CV1966.


JUDGMENT:     Affirmed.


APPEARANCES:
Brad Council, for appellee.


James Vitullo, for appellant.


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


Dated:  May 18, 2011

VUKOVICH, Judge.

{¶ 1} Defendant-appellant Customer Printing, Inc. appeals the damage award entered in the Mahoning County Common Pleas Court. Appellant argues that in addition to downtime, installation costs, and freight costs, the trial court should have ordered appellee Xpedx to refund the $121,697.33 purchase price of a digital imaging system (minus the $9,000 that appellant received by reselling the system). However, appellant cannot use the revocation remedy under R.C. 1302.66 because appellant did not give notice of revocation and chose to resell rather than return the system. Moreover, appellant cannot rely on the "believed value" versus the "actual value at time of acceptance" differential contained in R.C. 1302.88 because appellant presented no evidence on the system's actual value at installation with the flaws. Thus, the judgment of the trial court is affirmed.

## STATEMENT OF THE CASE

{¶ 2} In order to update its technology, Customer Printing purchased a digital imaging system from Xpedx for $121,697.33. The system was installed in early 2005. The system suffered many technical problems in the first six months of operation. Although the new system was down at times, Customer Printing still had its regular printing equipment in operation. Xpedx provided support and service, such as replacing the processor. After these initial problems were addressed, the system worked but allegedly still suffered some intermittent problems. There were claims that Customer Printing should have removed its carpeting due to instability in plate-feeding and issues with static.

**{¶ 3}** Customer Printing then merged with another company and needed only one system. It decided to sell the system it had purchased from Xpedx because the other company's processor component had been manufactured by a well-known corporation while its own processor had been manufactured by a corporation that had stopped making and providing support for the component. Xpedx tried to help Customer Printing sell the system. When this was unsuccessful, a broker of used printing equipment got the system operational on its showroom floor and eventually sold it for $9,000.

**{¶ 4}** On May 8, 2008, Xpedx sued Customer Printing to collect on an unrelated outstanding balance owed for printing supplies. Customer Printing admitted that it owed $48,481.22 but filed a counterclaim for damages related to the digital imaging system, claiming breach of contract due to the system's initial inoperability and false representations as to its performance. The counterclaim was tried to a magistrate.

**{¶ 5}** On February 25, 2010, the magistrate issued a decision finding that Xpedx had made representations in addition to the manufacturer's warranty and ruling that Customer Printing was entitled to damages. The magistrate refused to award lost profits, because Customer Printing had failed to support or clarify its general estimate that it lost $100,000 in sales. The magistrate did not specifically address Customer Printing's request for a return of the purchase price. The magistrate awarded Customer Printing $46,200 in damages due to the testimony that the company had suffered $35,892 in downtime hours of employees who were trying to fix the system, $8,982 in installation costs, and $1,326 in freight costs. With the set-off for the stipulated

$48,481.22 bill Customer Printing owed to Xpedx, Customer Printing was ordered to pay $2,281.22 to Xpedx.

**{¶ 6}** Customer Printing filed timely objections, arguing that the magistrate overlooked its request for damages for the purchase price and citing R.C. 1302.66(A)(1) and 1302.88(A) in support of this request for a refund. On August 19, 2010, the trial court overruled the objections and entered the same judgment as recommended by the magistrate. Customer Printing filed a timely notice of appeal.

ASSIGNMENT OF ERROR

**{¶ 7}** Appellant's sole assignment of error provides:

**{¶ 8}** "The trial court erred in not awarding purchase price as an element of damages after finding a breach of contract."

**{¶ 9}** Appellant claims entitlement to a refund of the purchase price of $121,697.33 minus the resale amount, which appellant terms a "salvage value." Appellant states that when warranties are made and breached and damages are suffered, all the elements exist for a refund of the purchase price. Appellant relies on R.C. 1302.66(A)(1) and 1302.88(A) and (B) and cites various cases involving refunded purchase prices.

**{¶ 10}** R.C. 1302.66 deals with the buyer's revocation of acceptance of nonconforming goods. "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it." R.C. 1302.66(B). A buyer who revokes has the same rights *and the same duties* with regard to the goods involved as if

he had rejected them. R.C. 1302.66(C). Rejection means the buyer never accepts the goods and thus is ready to return them.

{¶ 11} As appellee points out, in order to invoke this statute, the buyer must revoke acceptance of the goods by returning them or by notifying the seller that they are invoking the right to revoke their acceptance of the goods and thus that they wish to return the goods. In all the cases cited by appellant, the buyer was returning the items in order to receive a refund of the purchase price. See, e.g., *Aluminum Line Prod. Co. v. Rolls-Royce Motors, Inc.* (1993), 66 Ohio St.3d 539, 542 (request for revocation involved plaintiff returning vehicle and defendant returning purchase price); *Lanham v. Solar Am. of Cincinnati* (1986), 28 Ohio App.3d 55, 57 (revocation involved request for defendant to take back the solar heater it installed); *Evans v. Graham Ford, Inc.* (1981), 2 Ohio App.3d 435, 439 (return of purchase price requires return of truck).

{¶ 12} Here, appellant kept the system for years and then sold it because of a merger with another company who had its own system and because the manufacturer no longer made or supported the product. See Official Comment 6 to R.C. 1302.66 and UCC 2-608 (the buyer may not revoke his acceptance if the goods have materially deteriorated except by reason of their own defects). We recognize that worthless goods need not be offered back. Id. However, the system worked and it sold for $9,000; thus, it was not worthless. And this low price was due at least in part to the fact that it had been used for years and was no longer being manufactured. See id.

{¶ 13} In conclusion, there is no evidence that appellant notified appellee that they were revoking their acceptance of the system, and in fact appellant asked appellee to assist in selling the system so it would not have two systems when it merged. See

Official Comment 5 to R.C. 1302.66 and UCC 2-608 (more than mere notification of breach is required for notification of revocation). Cf. *Aluminum Line*, 66 Ohio St.3d at 542 (plaintiff satisfied initial requirement by providing written notification of revocation of acceptance of vehicle). By selling the goods, appellant lost the right to revoke its acceptance of them. Thus, appellant cannot now rely on R.C. 1302.66.

{¶ 14} As to R.C. 1302.88, this statute deals with a buyer's damages for issues with *accepted* goods. See Official Comment 1 to R.C. 1302.88 and UCC 2-714 (this remedy is for use after the time for revocation has passed). This statute provides in full:

{¶ 15} "(A) Where the buyer has accepted goods and given notification as provided in division (C) of section 1302.65 of the Revised Code [stating that buyer must notify seller of breach within reasonable time], he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

{¶ 16} "(B) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

{¶ 17} "(C) In a proper case any incidental and consequential damages under section 1302.89 of the Revised Code may also be recovered."

{¶ 18} As appellee points out, even assuming that the purchase price of $121,697.33 established the value of the goods at acceptance *had they conformed* to the specifications, appellant failed to offer evidence on the other part of the test: *the actual value* of the nonconforming goods at the time and place of acceptance. See R.C.

1302.88(B). Testimony that appellant received $9,000 on resale years after acceptance and use is not evidence of the value of the new system at the time of acceptance in early 2005. See *Hokes v. Ford Motor Co.*, 9th Dist. Nos. 22502 and 22577, 2005-Ohio-5945, ¶ 25 ("The record is void of any evidence of the reduced value of the van; Owners failed to present evidence through their own testimony or that of others as to what the value of the van was when one takes into consideration the 'no start' problem. * * * To constitute such evidence Owners, or other witnesses on their behalf, needed to explain in terms of value, by percentages or monetary amounts, how the problems with the van reduced its value into the value as accepted").

{¶ 19} As appellant's testimony showed, one reason for the decline in value was the mere passage of time, and another reason was that the manufacturer (who was unrelated to appellee) stopped producing and supporting a main component of the system. Moreover, appellant stated that the main problems with the system were remedied after the first six months. In fact, appellant's evidence leads one to believe that it would have kept using the system if it had not merged with a company who owned a more expensive system, which had been manufactured by a well-known corporation. Finally, appellant admitted that the broker who ended up selling the system for it had the system in operational condition on its showroom floor while the system was for sale. And appellee presented evidence that the system was purchased and used by a local company, whose current owners are known to appellee's employees.

{¶ 20} Nevertheless, due to a lack of valuation evidence required under the statute, the court was not able to compute a purchase price figure under R.C.

1302.88(B). Thus, the court utilized only R.C. 1302.88(A), losses in the ordinary course of events due to the nonconformity.[1]

**{¶ 21}** For all of these reasons, appellant was not entitled to the purchase price under either R.C. 1302.66 or 1302.88. Thus, the trial court did not err in refusing to award appellant an additional amount for the purchase price minus the $9,000 resale value. Therefore, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

WAITE, P.J., and DEGENARO, J., concur.

---

[1]The court did not additionally use R.C. 1302.88(C) for lost profits due to the estimate-like testimony and perceived lack of proof. In any event, appellant's testimony was on lost sales, not lost profits. Moreover, appellant admitted that, during the troubleshooting on the new system, they still had the system they had used for years, which could presumably handle its customers. In any event, appellant does not contest the failure to award lost profits on appeal.